LUCY W. S. MORGAN v. MICHIGAN AIR LINE R. R. CO. ET AL.

*Construction of contract—Rights of non-appellants—Interest—Application of payments—Notice.*

1. The purposes of the parties to an undertaking in making or changing it, may properly be considered upon its interpretation in equity.

2. On appeal in chancery the rights of such defendants as have allowed the bill to be taken as confessed, cannot be considered, except so far as necessary to determine the rights of those who appeared and defended.

3. An interest clause in a bond, provided that "in case any sum of principal or interest shall not be paid when due, [the obligors shall] pay interest thereon, at the rate of ten per cent. per annum, during all the time the same may remain overdue and unpaid." *Held* that this did not authorize the compounding of interest; unpaid principal or interest would draw interest until paid, but without rests.

4. The application of payments upon a mortgage will be as justice and equity require, where no agreement controls, or where an agreement

is unlawful. Scattering payments permitted by the mortgagee should, if not otherwise agreed, be applied (1) to the extinguishment of interest due, (2) to the payment of principal.

5. Third persons are not bound to take notice of arrangements to extend times for payment or to exchange securities, and cannot be presumed to have knowledge thereof.

6. A person whose agents and representatives are competent, and well informed as to all matters affecting their principal's interests, cannot plead want of notice of anything which they know.

Appeal from Jackson. (Newton, J.)    Jan. 30.—Sept. 29.

FORECLOSURE bill : cross-bill to cancel contract. Defendants appeal. Decree modifed.

*Gibson & Parkinson* and *Eugene Pringle* for appellants.

*Noah W. Cheever* for appellee.

SHERWOOD, J.   The original bill in this case was filed on the 12th day of May, 1877, and the answer thereto on the 27th of August, and the amended answer on the 28th of August, 1881.  Cross-bill was filed on the 1st of October, 1881, and the answers thereto on the 21st of October following.

On the 9th day of April, 1866, Mrs. Lucy W. S. Morgan was the owner of the south part of the northeast quarter of section 2, in township 3 south, of range 1 west, in the county of Jackson.  On that day she sold and conveyed the same to George H. Lathrop, one of the defendants, for the sum of $16,000, for the payment of which, and the interest thereon, he gave her a bond in the penal sum of $32,000, executed by himself and Moses A. McNaughton, and to secure the payment of the latter Lathrop executed and delivered to Mrs. Morgan a mortgage upon the eighty acres of land described.  The condition of the bond is that if the

"obligors, George H. Lathrop and Moses A. McNaughton, or their heirs, executors, or administrators, shall and do well and truly pay, or cause to be paid, unto the above-named obligee, or to her certain attorney, executors, administrators, or assigns, the sum of sixteen thousand dollars within ten years,

in sums not less than one thousand dollars at a time, and only at the time of paying interest or after thirty days' notice, and shall semi-annually, and on or before the ninth day of April and October in each and every year pay all the interest that shall have accrued on the whole sum, and shall also, in case any sum of principal or interest shall not be paid when due, pay interest thereon at the rate of ten per cent. per annum during all the time the same may remain overdue and unpaid, without fraud or delay, then the preceding obligation to be void ; otherwise to remain in full force and virtue."

The bill in this case is filed to foreclose said mortgage, and complainant claims there was due, at the time the bill was filed (August 27, 1878), the sum of $24,490.39, and gives the following statement of payments made upon the mortgage, and the application made thereof, viz. : "Fifty dollars paid at the date of said bond and mortgage : five hundred and sixty dollars, October 12, 1866 ; three hundred and fifty dollars, April 18, 1867; four hundred and twenty dollars, July 13, 1867; three hundred and fifty dollars, October 10, 1867 ; and eleven hundred and twenty dollars, July 11, 1868; which several sums, exclusive of the fifty dollars paid at the date of the mortgage, were paid, accepted, and indorsed as the payment of interest to October 9, 1868, as if paid when due, and no interest not paid is to be charged or paid on any interest overdue prior to October 9, 1868 ; and that the further sums paid,—forty-seven dollars and seventy-five cents, September 13, 1869 ; thirty-four dollars and seventy-seven cents, January 31, 1870 ; one thousand dollars, April 10, 1871; eighty-seven dollars and thirty-six cents, December 14, 1871 ; seven dollars and forty-seven cents, December 13, 1872 ; five hundred dollars, December 16, 1872 ; and two thousand dollars, August 4, 1874, all of said sums paid since 1868 being paid, accepted and receipted,—to apply, first, to make up the difference between paying all sums as they become or might become due, and paying compound semi-annual ten per cent. interest on such sums as had remained, or might remain, overdue and unpaid while overdue, until paid : and that no further, other or different sum has been

paid, collected, or received upon or on account of said bond or mortgage."

The bill of complaint avers that Lathrop and wife, on the 14th day of May, 1866, conveyed the west thirty acres of the mortgaged premises to the Mayor, recorder and aldermen of the city of Jackson, and their successors in office, to be used for the purpose of a public park and not otherwise. And complainant further avers that soon after such conveyance of such thirty acres the corporate authorities of said city of Jackson, at the request of the common council of the said city and on the making of said bond, and upon the representations of the members of the common council of the said city of Jackson, making such request and representation in behalf of said common council, that said thirty acres would without any unnecessary delay be immediately improved, and used and kept as a public city park, and the right-hand or northeasterly bank of Grand river, which runs near the westerly part of said thirty acres, would very soon be dyked by said city, or so embanked or raised as to prevent any of the water of said river from being made to overflow any part of said mortgaged premises by reason of the dam in said river on the same section below said mortgaged premises, and that such park land would be thoroughly drained by means of a ditch, or ditches or drains, constructed by said city of Jackson, extending across such mortgaged premises from north to south, and emptying into said river below such dam, and that the remainder of the mortgaged premises would be greatly benefited, and the value thereof greatly increased, by such improvements, and the permanent use of such thirty acres as a public city park, she was induced to and did, on the 15th day of June, 1866, release to the city, and discharge from the operation of the mortgage, the said park lot for a public park, but for no other purpose, and that the important part of the inducement for the release was the speedy and permanent improvement of the park, as above promised, which would increase the value of the remainder of the mortgaged premises, and that the city never made any of the improvements promised.

The bill further avers that after the city received such conveyance of the thirty acres from Lathrop and release from complainant, said Lathrop surveyed, laid out, and platted the remainder of the eighty acres covered by the mortgage, and recorded the plat as Morgan's addition to the city of Jackson; and Lathrop and wife conveyed an equal undivided half of the mortgaged premises to said defendant McNaughton.

Complainant further states that upon certain flattering representations of Lathrop as to the increase in value of the mortgaged property from time to time, and its probable future increase in value, she has been induced to release several parcels of land mentioned in said plat from the operation of said mortgage, and in so doing she released by mistake lots 8, 10, 11, and 12, in block number 13, and claims they are still subject to her equitable lien under said mortgage.

She further avers " that said Lathrop and McNaughton have sold and conveyed many of said lots to different persons, who have erected buildings thereon, which are subject to said mortgage, and in some cases the purchasers have sold to others; and said Lathrop has given several mortgages upon the lands, which are still outstanding and unpaid. That complainant, at time of making said releases, had no knowledge or information that Lathrop had in any manner incumbered said lands, or conveyed any portion thereof, except said mortgage to complainant, and his deed of park and deed to Moses McNaughton, and except lots released by her; and at time of such releases by her she had no knowledge that said Lathrop or McNaughton had conveyed or incumbered said mortgaged premises except the parcels released by her, and did not know that any person, except said Lathrop, McNaughton and complainant, had any interest in said premises except as above stated. . That on March 19, 1869, said Lathrop and McNaughton contracted to sell to Michigan Air Line Railroad a strip of land fifty feet wide across said mortgaged premises, and adjoining the route of Ft. Wayne, Jackson & Saginaw Railroad, for the purpose of using the same

for a track for the railroad, and not otherwise; and in consideration thereof said railroad company agreed to build a stone or brick sewer, not less than three feet in diameter, commencing on the southerly side of Liberty street, at easterly terminus of a sewer then built by Michigan Central Railroad Company, and extending thence easterly to said Michigan Air Line Railroad, thence to south line of said mortgaged premises, to be as deep as bottom of Michigan Central Railroad sewer, so that south end shall not be more than six inches higher than starting point; and said contract also provided that said Michigan Air Line Railroad Company should construct two or more sewers or open drains to carry water into said sewer to fully drain said lands, and that a free passage for the water on said lands should be immediately prepared by Michigan Air Line Railroad Company. And it was further provided in said contract that said Michigan Air Line Railroad Company should have fifty feet more of said land, at $2000 per acre, by giving notice in two years. That on December 9, 1869, said Lathrop and McNaughton sold and conveyed fifty feet more of said mortgaged premises, extending on a curve across said premises, to the Michigan Air Line Railroad Company, for which the railroad company were to pay the sum of $4000 on or before August 1, 1874, with interest at ten per cent. per annum. That both said contracts of sale by said Lathrop and McNaughton to said Michigan Air Line Railroad were made without the permission or knowledge of complainant, and complainant never released said lands from her mortgage. That the Michigan Central Railroad Company has leased the Michigan Air Line Railroad, now controls the same, and has used and occupied said land conveyed to Michigan Air Line Railroad. That said railroad companies have not paid for said land as per said agreement, and alleges that said land and all improvements thereon are subject to said mortgage. That the Ft. Wayne, Jackson & Saginaw Railroad occupy and use the said first-mentioned fifty feet of land sold to Michigan Air Line Railroad Company. That complainant first knew of said contracts with said Michigan Air Line Company about February, 1876, and

now owns said contracts and is willing to apply the amount
of the same upon said mortgage when said contracts shall be
paid.    That after said Lathrop and wife had conveyed said
thirty acres to the city of Jackson for a public park, and after
complainant had released same for that purpose, said Lathrop
and wife quitclaimed the same to the city of Jackson ; and on
or about January 21st, 1871, said city of Jackson, by warranty
deed, conveyed the same to James F. Joy, trustee for the
benefit of Michigan Central Railroad Company,    *    *    *
and said Joy had notice that said lands were conveyed to said
city for the purpose of a public park, and not otherwise, and
released by complainant for that purpose, and that all the
conveyances of said park gave said James F. Joy notice that
it was conveyed for a park only.    That the consideration for
the conveyance by said city to James F. Joy, as trustee, for
benefit of said. Michigan Central Railroad, was the agree-
ment by said company that it would erect its principal repair-
shops at or near the junction of said* Michigan Air Line
Railroad and said Michigan Central Railroad, near said city
of Jackson, and near said thirty acres of land conveyed to
said city for a park; but said Michigan Central Railroad
erected their repair-shops at Detroit, and complainant insists
that said thirty acres is still legally and equitably subject to
the lien of said mortgage.    That about December, 1875, said
Lathrop was declared a bankrupt by decree of the district
court of the United States for the Eastern District of Michi-
gan, and such proceedings were had in said court that com-
plainant was authorized to foreclose her said mortgage in
accordance with the laws of the State of Michigan."

The Michigan Air Line Railroad Company, the Michigan
Central Railroad Company, and James F. Joy, trustee,
appeared and filed their joint and several answer to the com-
plainant's bill.    Three of the other parties appeared, but
made no answer, and the bill was taken as confessed against
all the parties who failed to appear, or, appearing, failed to
answer.

The defendants answering admit the making of the bond
and mortgage, and that they were given for the purchase

money of the property mortgaged. They do not admit the statements of the bill in regard to interest; know nothing of or how the payments were made or applied; and aver that the complainant, previous to receiving the bond and mortgage, by written contract, agreed to sell the mortgaged property to Lathrop for $16,000, one-quarter of which he was to pay or secure to the satisfaction of A. B. Gibson, of Jackson, within thirty days, when a deed was to be made, and a bond and mortgage taken for the balance, Gibson being made trustee for complainant to receive the securities and hold the same for her; that $6000 good interest-bearing bonds were deposited with Gibson, and were held as collateral security for complainant at the time the bond and mortgage were actually made in May following; that the bond and mortgage being executed for the full purchase price of the property, by agreement of the parties the collateral security mentioned was to stand as security for the said bond and mortgage. They admit the conveyance of the thirty acres to the city of Jackson for a park; and aver that a title to the land in fee-simple was conveyed to the city by the deed, and deny that it in any way qualified or limited the grant to the mayor, recorder and aldermen; that it was understood by the complainant when Lathrop purchased the land that the thirty acres was really purchased for the city, and with the understanding that Lathrop and McNaughton would convey it to the city, and that the city would pay the complainant the purchase price therefor, and that she was to receive the bonds of the city from Lathrop and McNaughton upon the purchase price of the land; that when complainant released the mortgage in June, 1866, on the park lot, she received as a consideration therefor the said interest-bearing bonds of the city of Jackson to the amount of $6000, which were for her convenience and by her direction deposited with said Gibson, making, with the other securities held by him for her, $12,000 collateral to the bond and mortgage, and bearing an equal or higher rate of interest; that Gibson was during his life-time entirely responsible and trustworthy; that he died in 1869, and Alonzo Bennett was his administrator, who received and

held such securities for said complainant, and that said Bennett is also responsible and trustworthy; that the said Michigan Central Railroad Company is interested as purchaser of certain parcels of said land; that it paid defendants Lathrop and McNaughton $4000 therefor, on the 5th day of January, 1875; that such purchase was made with the agreement of these grantors that the same should be released from the operation of the mortgage, but which has not been done; that the land thus purchased was for the purpose of erecting thereon a pump-house and machinery to supply their roundhouse and machine-shops at Jackson with water, and the company has expended $5000 thereon, and has used the same for the purpose aforesaid continuously since; that said purchase and use have continued during the time Gibson and Bennett have held the securities; that defendant insists that complainant had sufficient notice of the interest of the said company; and that it was the duty of the complainant to apply in the interest of the defendant the securities deposited as aforesaid to the reduction of the mortgage debt, which would leave but about $3000 unpaid.

The defendant the Michigan Central Railroad Company further avers that on its purchase of the pump-lands the complainant voluntarily released parcels of the mortgaged premises, which defendant had the right to have held under the lien of said mortgage, and the value of which should have been applied to its satisfaction, before the interest of defendant could be affected, and that the same, together with the collateral securities above mentioned, would have been sufficient to pay the entire mortgage lien.

The Michigan Central Railroad Company and defendant Joy further say that the deed of the park lot to the city vested a title in fee in the city; that when the land was purchased by Lathrop it was understood between Mrs. Morgan and Lathrop and McNaughton that really the said thirty acres of land was being purchased for the city, and she then expected such conveyance would be made by Lathrop and McNaughton to the city, and that the purchase price would be paid by the city to her, or to others for her, and that all

the parties had notice thereof. They admit the discharge of the thirty acres from the incumbrance, but deny such release was simply for the purpose of having the land used as a public park; but, on the contrary, they aver that she received at the time about $6000 of the city's bonds as aforesaid, which was received by Lathrop and McNaughton as part of the price for the lot as consideration for making the release, and that it is immaterial to them what representations were made to complainant at the time she gave the release, but deny that the consideration was such as is stated in the bill, and aver that the release was absolute.

Defendants further aver that the city did make improvements on the lot after its purchase, and that it never dedicated it as a park, and it was never used as such. They admit that the city did, in January, 1871, convey in fee simple to defendant Joy, as trustee, the land mentioned in the bill as conveyed to him, but deny he had any notice that the land had been conveyed or released to the city solely for a park, or that the deed to the city contained any limitations to that effect, and deny such to be the fact; and they further admit that a part, but not the only, consideration for the deed to him was that the railroad company would remove to or erect their central engine and repair-shops at Jackson; that it did remove its shops there as agreed upon, and the mortgaged premises are greatly increased in value thereby, and that the company has paid a good and valuable consideration for the lands conveyed to it, and that complainant had notice of the conveyance when it was made, and that she is estopped by such knowledge and acquiescence from now asserting the lien she claims against such lands.

Defendants further claim that if they are mistaken in the view that the release is good as to them, yet they are entitled to have the full amount of the aforesaid collaterals, with the value of the lands which were subsequently released, applied to the payment of the mortgage, and which were worth $8500, and in that event nothing would remain for the Michigan Central Railroad Company to pay. They further admit the platting of Morgan's addition; do not know what

lots were sold by Lathrop and McNaughton, except those to the railroad companies, or whether the complainant's mortgage still remains a lien upon such lots; admit the other releases made by Mrs. Morgan, but do not know upon what consideration, nor what mistakes have been made in such releasing.

Defendants further aver that as to every conveyance to the defendants, or either of them, by Lathrop and McNaughton, or to the city of Jackson, the complainant had full knowledge thereof, and the purpose for which they were made, both at and before the time of making the same, and also knew that Lathrop and McNaughton had assigned and conveyed portions of the mortgaged premises, and that she had a general knowledge of all the acts and doings of Lathrop and McNaughton and of said city in the premises, and it was agreed between herself and Lathrop and McNaughton that they were to turn over the securities they might receive upon the sales of said mortgaged lands to her, and that her husband, who is an attorney and had charge of her business, frequently visited Jackson and examined into the condition of the mortgaged premises and her securities, and consulted with Lathrop and McNaughton, and consulted the records with reference to incumbrances and what was being done, and had notice of all liens and transfers of the property.

Defendants further deny that any such contracts with the Michigan Air Line Railroad Company as are set up in the bill were ever made by said company with Lathrop and McNaughton; that such contracts, if made, were null and void; that the parties pretending to make them on behalf of the company had no power so to do. And they further say that so much of the mortgaged premises as has been occupied by the Michigan Air Line Railroad Company and the Central Company has been by permission and under license of Lathrop and McNaughton, and deny any liability on the part of either of the companies to perform either of said contracts. They further say it would be impossible to make the drainage called for in the contract, because of insufficient

fall to construct the ditches. They further say that if complainant is the owner of the contracts, she has no rights thereunder against the defendants, and that the non-performance of said contracts by defendants has not subjected the premises occupied by them to the lien of complainant's mortgage; that at the time defendant Joy received the quitclaim deed as trustee, he had no notice that the land had been conveyed to the city of Jackson for a public park; and deny that under the conveyance the city could only use the land for a park. They further aver that the Central Company has performed the acts constituting the consideration for the deed of Joy mentioned by the complainant.

The defendants further say that the Air Line Railroad Company neglected until 1881 to locate the right of way across said mortgaged lands, when it was constructed, or to make and file the map thereof required by law, but that omission has been supplied, and the Central Company has been authorized to proceed, in the name of another company, to condemn the land for the right of way; that both said companies have attempted to negotiate with complainant, and with Mary McNaughton, for the same, but Mrs. Morgan claims that the matter of the right of way has been arranged by the pretended contracts set up in her bill, and she refuses to release the same from the lien of her mortgage, except upon payment of the sum due her upon the contract, and neither she nor Mary McNaughton will accept reasonable compensation for their interest in the right of way; and defendants claim that the sum stated to be due upon the contract is more than twenty times the value of the land used and the damages suffered.

Defendants admit said Lathrop is a bankrupt, but do not know whether complainant has been authorized by the court to bring this suit. Neither do they know what amount has been paid on the mortgage, or what is secured and unpaid. They, however, deny that the complainant is entitled to compound semi-annual interest on any portion secured by the mortgage, as claimed in the bill. They believe the computation stated is correct, according to the premises and rule

adopted by her, but that she cannot legally compound the interest; but they do not deem the computation material to the defendants, because the application of the collaterals, and the value of the land released, as before stated, after the conveyance of the thirty acres and of the lands for the pump-house would, in either case, or by any legal mode of computation, extinguish the mortgage claim.

On the 3d day of September 1881, the Air Line and Michigan Central Companies, defendants, filed their cross-bill against complainant and defendants Moses A. McNaughton and Mary R. McNaughton, in which substantially the same matters are set up as are contained in the amended answer, and further allege that the equity of redemption of said mortgaged premises is now owned by the said defendant Mary R. McNaughton, and that the mortgaged premises remaining undischarged are worth over $10,000 less than the amount claimed to be owing upon the said bond and mortgage; and that the said defendant George H. Lathrop has been duly discharged in bankruptcy for his debts, and no personal claim is made against him in complainants' bill.

Complainants pray in their cross-bill that the contract of December 9, 1869, between the Michigan Air Line Company and Lathrop and McNaughton, in regard to the right of way across the mortgaged premises mentioned in Mrs. Morgan's bill, may be decreed fraudulent and void, and ordered to be delivered up and canceled.

To the cross-bill Mrs Morgan made and filed her separate answer, in which she states in substance what she stated in her bill relating to the contract of the Michigan Air Line Company with the defendants Lathrop and McNaughton; avers that the contract was known to, and approved by, the executive committee of said Air Line Company, and that said committee was authorized by the board of directors to obtain the right of way for the company, and that the contract was understood and approved by the directors and stockholders; that the railroad was constructed thereunder across the mortgaged land, and that no other license was ever given upon any other terms to the company for its construction, except

those agreed upon in the contract, and that she is advised that the contract is legal. She denies that Lathrop and McNaughton, or either of them, after or before the date of the contract, ever gave the Air Line Company in any way power to locate its route, or construct its railroad, on or across the mortgaged premises, except under the conditions of the contract; or to take possession of the premises for such purpose; and insists that the terms of the contract should be performed before said complainants, or either of them, can be entitled to a release or conveyance of the lands used by the railroad. That the defendant believes the said contract is a legal one, and that she has the right to and does rely in good faith upon it for the purchase and payment for the lands mentioned in it, and for that reason has refused to arbitrate, or in any manner vary the terms thereof, and claims that the complainants are entitled to no benefits from the cross-bill, and prays it may be dismissed.

Defendants Mary McNaughton and her husband filed their joint and several answer to the cross-bill, and say that while they appeared in the original suit by solicitor, they, nor either of them, ever read, or heard the original bill read, nor was the substance thereof stated to them, except that it was a bill to foreclose Mrs. Morgan's mortgage, and their knowledge of its contents in filing their answer is derived from the cross-bill, and they leave the complainants to make their proofs of what is stated in the cross-bill; that they were informed the appearance and answer of the defendant, the Michigan Air Line Railroad, to the original bill, was unauthorized, and that it has no authority to join in the cross-bill. In relation to the contracts for the right of way, they claim that they are valid, and Mrs. Morgan is entitled to pay thereon from complainants; and pray that the cross-bill may be dismissed.

A motion was made to strike the cross-bill from the files, on the ground that the solicitor for the Air Line Railroad had no authority to file the same. The motion was subsequently heard and denied. Proofs were taken in both cases, and the cases were heard together, upon the pleadings and proofs, before Judge Newton, who made a decree dismissing

the cross-bill, and entered a decree of foreclosure in the original case in favor of the complainant against the defendants for the sum of $36,758.67, with interest thereon and costs of the suit ; and held that defendant Moses A. McNaughton was personally liable for the debt, and that in default of payment the real estate not theretofore finally released be sold in the usual manner, and that Moses A. McNaughton be held for the balance, and that complainant have execution against him therefor.

The circuit judge also further found and decreed that the indebtedness upon the mortgage was for purchase money of the mortgaged premises. That only $50 of the principal had been paid. That the time for payment was ten years, with interest at seven per cent. payable semi-annually, except when payments were overdue of either principal or interest, they should draw interest at ten per cent. to be computed semi-annually until paid; and that all interest was paid up to October 9, 1878. That all sums received since then were paid and receipted to apply, so far as might be necessary, to make up the difference between paying the sum or sums due, whether of principal or interest, as they became due, and ten per cent. compound semi-annual interest that remained overdue and unpaid, and that all sums which had been paid on account of said bond and mortgage before bringing this suit had been so paid and received to so apply before any defendant corporations had acquired any legal interest in block 6 used for pump-house. That it is proved by the evidence in the case that it was understood by the city authorities, and by Lathrop and McNaughton, and all parties interested, that the park land, and complainant's release thereof to the city, were applied for, accepted and deeded, and only intended for the purpose of a public park, and for no other use or purpose. That it was not intended or understood by any of the parties that the collateral securities deposited with Gibson, or the Jackson city bonds, or any other securities for which they might be exchanged, were to apply as payment on the bond and mortgage, and none of them were ever in complainant's possession, or within her control, and that she never saw any

of same except the contracts for the right of way, and those only at the time they were assigned to her; but it is proved that such collaterals were to remain securities for the payment of the bond and mortgage, without changing their ownership, and were deposited by their owners only for their convenience in exchanging them and substituting others, and that they were not liable to be applied even to the payment of the interest overdue on complainants' mortgage without the assent of Lathrop and McNaughton; and it does not appear that complainant ever received anything from such securities, or that any of the proceeds were ever applied on the mortgage. That the two contracts for right of way are valid, and that they were made and intended as securities for the benefit of complainant, and were duly assigned to her, and are still collateral security for the payment of the mortgage; and that she is still willing to release the right of way, and cause the same to be conveyed to either company upon receiving pay according to the terms of the contract. That complainant had no knowledge or information that Lathrop and McNaughton had in any way conveyed or incumbered any of said mortgaged premises, except the parcels previously released by her; nor is it made to appear that she had any reason to suppose that any person, except herself and Lathrop and McNaughton and their wives, had or expected soon to have, any claim upon any part of the premises not then or previously released from the mortgage lien by her.

The decree further designates the land released, and describes the parcels to be sold, and the class to which each parcel belongs, and directs the same to be sold in the inverse order of alienation, according to the order in which the parcels are given in the classes. The second class contains the lands in which the Michigan Central Railroad Company claim an interest in the mortgaged premises; also the lands which the Michigan Air Line Railroad purchased by contract. But the decree further provides that if the defendants interested in these parcels shall pay the amounts mentioned in the contracts before the day of sale, then they are to be excluded from the sale decreed.

The Michigan Central Railroad Company, and the Michigan Air Line Railroad Company, and James F. Joy, trustee, appeal from the decree in the original suit, and the two railroad companies named from the decree made in the cross-suit.

The case is an important one, and is very complicated in its facts, and, as presented in the arguments of the able counsel upon both sides, presents a variety of legal questions for solution not easily disposed of. The case, as presented upon the record, contains an amount of detail seldom submitted for our consideration and review, and the decree rendered by the learned judge who heard the cause at the circuit shows a careful examination and thorough review of all the questions necessarily involved in the case. The record is a large one, and a discussion of the testimony will not be attempted; neither do I deem it necessary, in determining the legal bearing of the several contracts and conveyances between the parties, nor in elucidating the views I entertain of their rights thereunder, so far as is necessary to a proper decision of the case. In giving interpretation to the various undertakings of the parties and changes made in the dealings of those interested from time to time, we cannot put aside their intentions and the objects sought to be accomplished by each.

It clearly appears that the mortgaged land was purchased by Lathrop for the purposes of speculation, and that the same was true of McNaughton's purchase; while on the part of complainant, it is equally plain her sole object was to keep the purchase money of the property securely invested at the largest rate of interest which could be obtained, even though from reckless speculators, on the longest possible time, giving any assurance of safety, and she now seeks to enforce payment from the securities taken. The city of Jackson seems to have been made to participate in the transactions more in the interests of the railroad companies, and in the scheme of speculation by the purchasers, than in subserving any want, necessity or convenience of the municipality or of its inhabitants.

The object of the Air Line Railroad in its negotiations is

unmistakable. It was to secure the right of way, and all the land in connection therewith needful and convenient for its then necessities or probable future wants, which it could obtain without making immediate payment therefor. This it has accomplished up to the present time. The Central Railroad Company, in taking its lease of the Air Line Road, sought to secure the use and benefit of all the Air Line franchises and desirable rights under the contracts it had made, under the most favorable circumstances it could, and in assuming the liabilities of the Air Line Company it has sought to govern itself in its dealings with that company and its creditors according to the strict letter of the law, acknowledged no responsibility, and yielding to no liability not within the letter of its engagements, and insists upon everything appearing in its favor, whether so originally intended or not. Its object in this suit is to defeat the lien of complainant claimed under her mortgage to the land now occupied by the company.

The defendant Joy is the president of the Michigan Central Railroad Company, ever true and vigilant in guarding, protecting and administering the great trusts committed to his charge. With all the learning of the profession he watches over the company's legal rights, with an eye single to its pecuniary interests and every advantage attainable, when its property is placed in jeopardy. His position will not permit him to concede what the law does not require. And he expects nothing which the law does not allow or secure to the interest he represents.

With this statement of the claims of the respective parties, their motives, intentions and objects to be accomplished in their dealings, and the mode and manner of their doing the business out of which the complainant's claim has arisen, and upon which the defendant's ground of defense is placed, it remains to be ascertained what change, if any, should be made in the decree made by Judge Newton, to protect and secure the rights of these parties. In this review, however, we cannot consider the rights of those defendants who have allowed the complainant's bill to be taken as confessed, any

further than it may become necessary in determining the rights of those who have appeared and made defense.

The first thing to be ascertained is what amount is due upon complainant's bond and mortgage. The defendants appealing admit that the sum claimed and stated in the bill was correct at the time the same was filed under the facts as she claims them, adopting her rule of computation. But they deny her right to compound the interest, or to compute interest upon interest, under the law as it stood at the time the bond and mortgage were made. The following is the provision contained in the bond for its payment:

"The condition of this obligation is such that if the above-bounden obligors, George H. Lathrop and Moses A. McNaughton, or their heirs, executors, or administrators, shall and do well and truly pay, or cause to be paid, unto the above-named obligee, or to her certain attorney, executors, administrators, or assigns, the sum of sixteen thousand dollars within ten years, in sums not less than one thousand dollars at a time, and only at the time of paying interest, or after thirty days' notice, and shall semi-annually, and on or before the ninth day of April and October in each and every year, pay all the interest that shall have accrued on the whole sum, and shall also, in case any sum of principal or interest shall not be paid when due, pay interest thereon at the rate of ten per cent. per annum during all the time the same may remain overdue and unpaid, without fraud or delay, then the preceding obligation to be void, otherwise to remain in full force and virtue."

Under this clause of the bond compound interest could not legally be allowed, and the computation was erroneous. The principal did not become due until ten years after the date of the bond, but the interest was payable at seven per cent. semi-annually, and if any sum, whether of principal or interest, remained unpaid after due, it then drew interest at ten per cent. until paid; neither semi-annual interest nor compound interest could be computed on overdue payments, either of principal or interest.

By the conditions of the bond, payments of principal could only be made before due in sums of $1000, and such payments were optional with the obligors. Payments of a

less amount could only be made at the option of Mrs. Morgan, and would not be under the conditions named in the bond, she having received it without any special agreement in regard to its application by the parties to the instrument, or if the application made was agreed upon and was illegal, the appropriation of payment would have to be such as the law requires, which will be as the justice and equity of the case demands. Under this rule it is not difficult in this case to determine what application should be made of all payments of principal which have been made, or of any moneys received on account of the mortgage indebtedness. All such sums should be applied when paid or received, first, to the extinguishment of the interest then due, and if any balance remains, it should be appropriated at once to the payment of the principal. This has not been done.

We next consider what other moneys should be applied in payment of the bond and mortgage, if any, than such as appear indorsed on the same. There can be no doubt, I apprehend, but that the city of Jackson could make the purchase it did of the park lands, and legally issue its bonds in payment therefor. The city paid for this land $6000 dollars, and gave six bonds of $1000 each, drawing interest at seven per cent. payable semi-annually. These bonds were payable yearly, a bond a year until fully paid, and were all paid by the city, principal and interest, according to their terms. They were issued to Lathrop, by whom they were assigned to Mrs. Morgan as collateral security to her mortgage, she having released the same upon the park lands. The first parcel of the mortgaged premises conveyed by Lathrop, or by Lathrop and McNaughton, was the park lands, and the several conveyances of this parcel seem to have preceded all other conveyances or contracts, except for right-of-way lands, and the conveyance by Lathrop to McNaughton in 1868 of an undivided half of the lands, east of the park. The next parcel sold was conveyed to the Michigan Central Railroad Company in 1875; but was sold and possession thereof taken by the company in 1871. The witness Philip Reith fixes the date of sale in September or October, 1871; but the time

of payment and of the making of the deed early in 1875. The Central Company, between October, 1871, and February, 1872, made an expenditure for pump-house, pump, and boiler on the lands, and for water-pipe in connection with it, amounting to $6419.41, and this pump-house has been in constant operation since February, 1872. The possession of the right-of-way lands, described in the contract dated December 9, 1869, made by Lathrop and McNaughton to the Michigan Air Line Railroad Company, has also been in the company since sometime in 1871, so that, in regard to each of the three several parcels of land in which it has an interest, the Michigan Central Company is the first purchaser of the mortgaged lands, except only the Fort Wayne, Jackson & Saginaw Railroad Company, as to its right of way. This appellant claims that as to it, the value or price received for all portions of the mortgaged premises since the construction of the railroad, or the occupation of the pump-house lands, discharged from the mortgage, should be applied to redeem the amount of the mortgage lien as to it, and that certain obligations at that time held as security to the complainant should be also so applied. The securities alluded to are the sum of $4000 in interest-bearing mortgages, placed, in May, 1866, in the hands of A. B. Gibson of Jackson and the $6000 of park bonds also placed in his hands in June, 1866. Of the first amount, $4000 was required by the contract of April 9, 1866, to secure the first quarter of the purchase money. The value of the part of the mortgaged lands northeast of the Central Railroad discharged in 1872, apparently without consideration, was variously estimated by witnesses at from $3000 to $6000, and the portion of the money consideration paid by the Fort Wayne Company, under its contract of 1874, was about $4200, of which but $2000 was paid to the complainant.

A distinction exists between these securities, and should be made, I think, between the funds they represent. The $4000 of securities deposited with Gibson was, by the contract of April, 1866, the primary fund for the payment of the first quarter of the purchase price, and the $6000 of city

bonds was the purchase price of the thirty acres, and also a primary fund to release it from the mortgage. These securities, amounting to $10,000, it will be noticed, were on interest from the date of the mortgage, and their relation to the original debt differed from the additional securities a creditor sometimes demands from his debtor, or which an embarrassed merchant sometimes gives by turning out the notes of his customers. The arrangement which is claimed to have been made, giving them a subordinate character, was one unknown to the world. In the case of the $6000 of city bonds the statement of their receipt went upon the record, and any person, not knowing of a different arrangement, was at liberty to presume that Mrs. Morgan would collect the interest as it should fall due, and the principal sums, and apply them. And so with regard to the securities which were the primary fund for the payment of the first quarter of the purchase price. The arrangements for extending the times for payment to the end of ten years, and for the exchange of securities from time to time, and for the authorization of A. B. Gibson as an agent to make the exchanges, were not such as the public or purchasers were bound to take notice of, or in regard to which they could be presumed to have any knowledge. The original agreement provides as follows in regard to the first one-quarter of the purchase price: "One quarter to be paid within thirty days, or its payment, with semi-annual interest, secured by notes or bonds well secured by good mortgages upon sufficient unincumbered real estate, to the satisfaction of A. B. Gibson of Jackson."

The bond and the mortgage, as well as the original contract between Lathrop and Mrs. Morgan for the purchase of the land, required the payment of the entire principal sum within ten years from its date. There may be some doubt in regard to the interest, but we have treated it as payable semi-annually. This agreement did simply one thing as to Mr. Gibson; it stipulated that his judgment should be taken by both parties as to the sufficiency of the bonds and the mortgages with which the first payment might be secured.

His letter of May 15, 1866, shows that he then held "ample collateral securities for $4000." He could only hold them for Mrs. Morgan. He appears to have assumed to act as agent for her in making exchanges of such securities in his hands from time to time for the convenience of Lathrop and McNaughton; but when or how he became thus authorized to make such changes for their benefit does not very clearly appear. The testimony by which it is sought to establish this authority to exchange these securities at the pleasure of Mr. Gibson, or convenience of Lathrop and McNaughton, I regard as very unreliable; but if Gibson had the right so to do so far as the $4000 was concerned, I do not think the testimony shows such authority as to the $6000 Jackson city bonds. This, I think, pretty clearly appears by Mrs. Morgan's testimony, wherein she says, in speaking of these bonds: "I understood that Lathrop and McNaughton were to see that it (the money on the bonds) was paid to me, but I supposed they would get it from the city ; I did not understand that Lathrop and McNaughton were to have these city bonds except they first paid me ;" and I think the testimony shows that the city bonds were treated by Mrs. Morgan as the primary fund from which the sum of $6000 was to be paid, and that Lathrop and McNaughton, or either of them, were trusted by her to receive the money on the bonds when paid, and that this latter fact is strongly corroborated by what appears from the records and papers, and the evidence relating thereto, from the city council; and that, as between these defendants appealing and the complainant, equity and justice require that in making the computation of the amount due upon the bond and mortgage the amount paid by the city of Jackson upon these bonds should be deducted, both principal and interest, as of the date the several payments were made. The bonds were numbered from one to six, inclusive, and according to testimony, were paid at the following dates: No. 1, April 9, 1870 ; No. 2, April 10, 1871; No. 3, December 13, 1871; No. 4, March 12, 1873; No. 5, October 5, 1874; and No. 6, September 6, 1875.

In regard to the contracts for the right of way made with

the Air Line Company by Lathrop and McNaughton, and mentioned in the cross-bill, it is plain that they cannot be sustained. The manner in which they were obtained, and the purposes to be accomplished, do not commend themselves to any court. They have received legislative condemnation for centuries. The value of the interests involved in these contracts has been made the subject of investigation in these cases, so that we may see what was intended and what ought to be done. The equitable rights of the parties, if not clear, are discernable.

From the time the mortgage was given, until the hearing in these cases, Mrs. Morgan cannot be held entirely ignorant, nor without some notice, of what was going on and how her interests were cared for, and how they were to be affected thereby. Her own husband, who is a reputable lawyer, of large business experience, evidently had the general charge of her affairs, and was frequently at Jackson, making inquiries, and could not very well avoid seeing what was being done upon the premises by the complainants in the cross-bill. Both Lathrop and McNaughton were old, intimate, and trusted friends of the Morgans, and Gibson and Bennett were not obscure men in the city of Jackson. These were all complainants' trusted agents, and who were cognizant of all that was being done by the railroad companies, and participated in nearly all the business in which Mrs. Morgan was interested. She therefore has no bona fide rights in the premises, arising from any want of knowledge or notice, either express or necessarily implied, to be guarded or protected. McNaughton, as director and principal manager of the Air Line Railroad Company, could not purchase land of himself for the company. The Michigan Central Railroad Company took the Air Line Company's property and rights as it found them. The contract described the right-of-way lands used and intended to be used by the Air Line Company, and which it transferred to the Michigan Central Company, or such interest therein as it had. These rights of way the Michigan Central Company took possession of and have used, or have the right to use, as it claims, under their rights ac-

quired from the Air Line Company, and also under a license derived from the owner of the fee thereof. And to such use as has been made thereof by either of the companies no objections seem ever to have been made by Mrs. Morgan, or by the owners of the fee, other than such as is contained in the original bill of complaint in this cause. Nothing seems yet to have been paid by either company for the said rights of way, or the use they have made thereof. Justice requires that a reasonable compensation should be made therefor. The complainant now owns, under the assignment made to her, whatever interest, legal or equitable, Lathrop and Mc-Naughton obtained under the contracts for right-of-way lands, and Mrs. McNaughton the reversionary interests in the fee, if any, to the same, and to the pump lands, subject, however, to the mortgage interest of Mrs. Morgan.

The Central Company have made large and valuable improvements upon the premises mentioned, under their license claimed, and their equitable rights therein, with the full knowledge and (so far as the record shows) assent of the owners of the fee and mortgage. And we think, under all the circumstances, equity and justice require that the Michigan Central Railroad Company should pay to the complainant, Mrs. Morgan, as full compensation, in addition to what has already been paid, for the said right-of-way lands and the pump-house lots, and for the use heretofore made thereof, the sum of $4000 within ninety days from the first day of December next, and that upon such payment or tender thereof being made, the complainant, Lucy W. S. Morgan, and the defendant Mary A. McNaughton make, execute and deliver to the Michigan Central Railroad Company a conveyance of the land described in the said right-of-way contracts and the said pump-house lots, free from all liens except those of the Michigan Central Railroad Company; and that Mrs. Morgan deliver up said right-of-way contracts to be canceled, and that said $4000 thus paid to Mrs. Morgan be applied to the payment of her said bond and mortgage, and that the decree at the circuit should be modified accordingly.

This is not a proper case in which to try the validity of the conveyances of the park lands to Lathrop and McNaughton, or to the city of Jackson, or that of the city of Jackson to the Railroad Company. The lien which complainant claims does not necessarily involve the title of the railroad company to these lands. The release complainant was paid for, to the extent of the value of the property released, and for which complainant's agents received the money, should be applied upon the mortgage. No objection was made by the party owning the reversionary interest in these lands (if any) to making a change in the use of the ground from a public park to railroad or depot grounds; neither does the record show any objections made on the part of complainant to such change being made; neither does it appear that its use as depot or railroad grounds, or for other railroad purposes, would at any time lessen the value of adjoining property, nor that any of complainant's interests have suffered from the contemplated change. It does not appear that the complainant, or any of her agents, ever intimated, until the filing of her bill, that she should insist upon a forfeiture for any cause, or upon a revival of her lien under the mortgage, if the character of the use of the park lands was changed to that for said railroad purposes; but, on the contrary, it appears that several of her agents at Jackson, if not all, greatly interested themselves in trying to secure such a change, and I think it is very doubtful whether such a result, in case of the change in the use of the grounds, was ever thought of or contemplated by complainant when the release of her mortgage upon the park lands was executed. Certainly the language of the release itself could not be held to furnish any grounds for such a suggestion. There is also much doubt whether such a construction as is claimed comes within the letter or spirit of the release, or the dealings of the parties, and there would be no equity in giving it such effect at this late day.

We do not think the park lands can, under the circumstances and testimony in the case, be again subjected to the lien of the complainant's mortgage. A re-computation must

be made in the case, and the decree at the circuit must be modified and entered anew, in accordance with the views herein expressed.

The other Justices concurred in the result.

———

Afterwards, at the following January term, a re-hearing in this case was denied, and the following memorandum filed:

PER CURIAM. In this case the motion for a rehearing is denied. Any mere details can be fixed when the decree is settled.