HENRY W. SMITH, EXECUTOR, ETC., v. EUSEBIA SMITH ET AL.

*Deed—Construction—Granting clause—Habendum.*

1. The object to be arrived at by courts in construing deeds or other contracts is to ascertain the intention of. the parties.

2. All grants must be construed reasonably, and in the light of surrounding circumstances. *McConnell v. Rathbun*, 46 Mich. 305.

3. It is well settled by numerous cases that when the *habendum* in a deed is repugnant and contrary to the granting clause it is void, and that it can only affect the grant when it can be construed as consistent with the premises. It cannot divest the grantee of the legal estate already granted him in the premises, nor can it frustrate a grant complete before, or abridge or lessen the estate granted.

4. In this case a deed executed by an aged father to his son (being one of twelve executed at the same time to the grantor's children and grandchildren, and differing only as to the names of the grantees and description of land conveyed), by which he granted, bargained, sold, remised, released, and quitclaimed unto the son and to his heirs for the use, benefit, and support of himself and his family, and the proper education of his children (the grantee being childless, but some of the other grantees having children), certain land, etc., to have and to hold for the period of his natural life, and after his death to his children in fee-simple, for the purposes and uses set forth in the deed, which was signed by the grantee, and contained covenants on his part to take, keep, and use the property in the manner and for the purposes for which it was conveyed, and to keep it free from levies, liens, and incumbrances during his natural life, and not to convey it or any interest

therein during the life-time of any of his children, or the life-time of any of his brothers or sisters, is held under the circumstances set forth in the opinion, and the authorities cited, to have vested the *fee* in said grantee, and the *habendum*, being repugnant to the granting clause, must be rejected.

Error to Cass. (O'Hara, J.) Argued June 6, 1888. Decided October 19, 1888.

Ejectment. Defendants bring error. Reversed. The facts are stated in the opinion.

*Howell & Carr* and *Edward Bacon*, for appellants.

*Harsen D. Smith ( C. I. Walker,* of counsel), for plaintiff.

LONG, J.   This is an action of ejectment, brought by plaintiff, as executor of the last will and testament of Joseph Smith, deceased, to recover possession of about 300 acres of land in the township of Calvin, Cass county, said to be worth about $9,000. There is no dispute as to the facts, and the whole question turns upon the construction of the following deed:

"This indenture, made this second day of February, in the year of our Lord one thousand eight hundred and eighty, between Joseph Smith and Jemima Smith, his wife, both of Cassopolis, Michigan, of the first part, and Thomas J. Smith of the second part, witnesseth: that said parties of the first part, for and in consideration of the sum of one dollar, and in further consideration of natural love and affection and of promises made by the parties of the first part to the party of the second part, and of improvements made on the land herein described by the party of the second part, and for services rendered to the parties of the first part by the party of the second part, having granted, bargained, sold, remised, released, and quitclaimed, and by these presents do grant, bargain, sell, remise, release, and quitclaim unto the said party of the second part and to his heirs for the use, benefit, and support of himself and his family, and the proper education

of his children, the following described land, · situated, lying, and being in the township of Calvin, county of Cass, and State of Michigan, to wit:

·" The east half of the north-east quarter, and the north-east quarter of the south-east quarter, and fifty-eight acres off the north end of the west half of the north-east quarter, of section seven; and the north-west quarter of the south-west quarter, and the south-east quarter of the south-east quarter, and the west half of the north-east quarter of the south-west quarter, and the east half of the south-west quarter of the south-east quarter, of section eight; all in township seven south, of range fourteen west, in said county of Cass, intended to be the same lands deeded to me by Henry W. Smith; to have and to hold for the period of his natural life, and after his death to his children in fee-simple, for the purposes and uses above set forth; and in consideration of the aforesaid grant and conveyance the party of the second part doth covenant and agree to and with the parties of the first part, their heirs, executors, administrators, and assigns, to take, keep, and use the premises and property above described in the manner and for the purposes for which it is hereby and herein conveyed.

" That he will, during the period of his natural life, keep and preserve the same free and clear from levies, liens, and incumbrances.

" That the rents, profits, and incomes therefrom, so far as the same shall be necessary, shall be during his said life-time devoted to the support of his family and the proper and suitable education of his children.

" That he will make no conveyance of any interest therein during the life-time of any of his children, or of any of his brothers or sisters.

" In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.

" Signed, sealed, and delivered in the presence of

" MARTHA E. DAVIS,          JOSEPH SMITH,      [Seal.]
" L. D. SMITH.               JEMIMA SMITH,      [Seal.]
                            " THOMAS J. SMITH. [Seal.]"

This deed was acknowledged in due form of law before a notary public, and placed upon record in the office of the register of deeds of said county on August 16, 1887.

The facts and circumstances surrounding the giving of this deed, as shown by the record, are that the testator, Joseph Smith, of Cassopolis, was in 1870 the owner of the premises in question, and of a large amount of other lands in Cass county. There is no claim but that such ownership continued until 1880. He was the father of eight children, six of whom were living at the time of his death, in April, 1880. Two of them had deceased, each of them leaving three children. He also left a widow, who is still living.

Previous to his death, and as early as 1872 or 1873, he permitted his son Thomas J. Smith, with his wife, to go into occupation of the premises in question, and to continue in the occupation thereof, taking the rents and profits, and paying the taxes, until February, 1880, when the deed in question was executed. His other children were permitted to occupy other of his lands in the same way, receiving the rents and profits thereof.

At the commencement of 1880 he was in very poor health, and had been for a number of years, and for six months had been confined to his home. He was then 71 years of age.

In February, 1880, he made provision for the distribution of his property among his children and grandchildren, he himself preparing the form of transfer of a portion of his real estate to each of his children and grandchildren upon the conditions therein named. They were drawn under his special direction by his granddaughter, May Armstrong, and he carefully examined each paper. They were all precisely alike, except as to the names of the grantees, and the description of the property conveyed.

On February 5, 1880, he and his wife executed and acknowledged, jointly with his son Thomas J. Smith, the instrument hereinbefore set forth, and it is upon the construction of this instrument that this case depends. This

deed was not recorded until 1887. At the same time, and as a part of the same transaction, said Joseph Smith executed to each of his six living children a note payable in real estate. The note executed to Thomas J. Smith was in the following words:

"$3,713.00.                    CASSOPOLIS, Febry. 5, 1880.

"On or before ten years from date, for value received, I bind myself, my executors, administrators, and assigns, to pay to Thomas J. Smith the sum of three thousand seven hundred and thirteen dollars, with one per cent. interest, in such real estate as I may have on hand, at a fair valuation.                    JOSEPH SMITH."

The notes to the other children were precisely like this, except as to the amount, being each of them for the sum of $5,000. On March 22 following he executed his last will and testament, appointing his brother, Henry W. Smith, plaintiff herein, sole executor, with—

"Full power to sell and convey any and all of my real estate in the settlement of my estate."

This last will was subsequently admitted to probate, and the plaintiff qualified as executor.

Joseph Smith died April 18, 1880. The plaintiff, as executor, took possession of all the real estate of the testator, except the home farm occupied by the widow, and the lands thus transferred to the several children and grandchildren as hereinbefore set forth, and he has sold and conveyed all said lands of which he thus took possession. An inventory was made of the real and personal property of the estate, but it did not include the lands mentioned in the several transfers to the children and grandchildren referred to, which were drawn by said May Armstrong, and executed in February, 1880. The lands described in these papers were in the possession of the several grantees. He assumed no control over them. The real estate inventoried $36,300, and the personal property $47,193.90.

The estate has never been fully settled; no commissioners on claims have been appointed, and no claims allowed by the probate court.    Part of the real estate notes, including the one going to Thomas J. Smith, have been paid in full, others in part.    The home farm, being occupied by the widow, is still undisposed of, and contains 150 acres, and was inventoried at $10,000.    Thomas J. Smith conveyed to his wife, Eusebia, the lands in question on August 12, 1887, and she claims to be the owner thereof.    On August 22 thereafter she leased the same to the defendant Longsduff, for one year, with the privilege of three.

Thomas J. Smith was married in 1869, and never had any children.    He died September 30, 1887, leaving a last will and testament, by which he devised all of his property, both real and personal, to his wife, Eusebia Smith, defendant herein, which will has been duly probated. This suit is brought by the executor of Joseph Smith, to recover possession of the premises thus referred to, which the defendant Eusebia Smith claims by virtue of said deed and by the will of her husband.

On the trial the defendants made seventeen distinct requests to charge, and the plaintiff four.    These requests were all refused, and the court charged the jury that under the facts proved in the case the plaintiff was entitled to recover, and instructed them to return a verdict accordingly, which was done.

Defendants bring the case into this Court by writ of error.

We need not discuss these several assignments of error separately, as the case must depend upon the construction to be given to the deed.    The object to be arrived at by courts in construing deeds or other contracts is to ascertain clearly the intention of the parties.    It is said by the court in *French v. Carhart*, 1 N. Y. 102:

"It is a cardinal rule in the construction of contracts that the intention of the parties is to be inquired into, and, if not forbidden by law, is to be effectuated. Too much regard is not to be had to the proper and exact signification of words and sentences, so as to prevent the simple intention of the parties from taking effect. And whenever the language used is susceptible of more than one interpretation, the courts will look at the surrounding circumstances existing when the contract was entered into, the situation of the parties, and the subject matter of the instrument."

It was said by Mr. Justice COOLEY in *McConnell v. Rathbun,* 46 Mich. 305 (9 N. W. Rep. 426):

"All grants must be construed reasonably, and in the light of surrounding circumstances."

And in that case the circumstances proved by parol testimony controlled the construction of the deed. In ascertaining the true meaning of the parties, the entire instrument is to be examined, and provisions apparently inconsistent with each other are to be reconciled, if possible.

In *Smith v. Packhurst,* 3 Atk. 136, Lord Chief Justice Willes laid down the rule:

"Such a construction should be made of the words in the deed as is most agreeable to the intention of the grantor. * * * We have no power, indeed, to alter the words, or to insert words which are not in the deed; but we may and ought to construe the words in a manner most agreeable to the meaning of the grantor, and may reject any words that are merely insensible."

It is contended by the plaintiff that the granting clause in the deed does not point out the extent or nature of the estate to be granted, nor does it use the ordinary expression "forever;" that the term "heirs" is qualified and controlled by the expression which immediately follows it, showing that it was not a simple estate in fee, but qualified by the words,—

"For the use, benefit, and support of himself and his family, and the proper education of his children."

That these peculiarities show that no estate in fee was conveyed by the granting clause, especially when considered in connection with what follows. Plaintiff's counsel further contend that if there had been a simple conveyance to the grantee and his heirs forever, in the granting clause, it would be controlled by the subsequent portions of the deed, which clearly indicate the purpose of conveying a life-estate; that the *habendum* is not only not repugnant to the granting clause, but is in full accord with it, when the peculiarities of the granting clause are considered; that at the death of Thomas J. Smith the property reverted to the devisees under the will of the grantor, of which the plaintiff is the sole executor; that, ejectment being a mere possessory action, not necessarily involving the title to the property, the executor could maintain ejectment by the provisions of the will, which gives the executor—

"Full power to sell and convey any and all of my real estate in settlement of my estate."

It is well settled, by numerous cases that when the *habendum* is repugnant and contrary to the granting clause it is void. It can only affect the grant when it can be construed as consistent with the premises. It cannot divest the grantee of the legal estate already granted him in the premises, nor can the *habendum* frustrate a grant complete before, or abridge or lessen the estate granted. *Nightingale v. Hidden,* 7 R. I. 118; *Pynchon v. Stearns,* 11 Metc. 316: 4 Kent, Comm. '468; 2 Bl. Comm. 298; *Canal Co. v. Hewett,* 55 Wis. 105 (12 N. W. Rep. 382); *Huntington v. Lyman,* 138 Mass. 205; *Hafner v. Irwin,* 34 Amer. Dec. 390; *Warn v. Brown,* 102 Penn. St. 352; *Flagg v. Eames,* 40 Vt. 23.

It must be conceded that the *habendum* cannot perform

the office of divesting the estate already vested by the granting clause, and it is void if repugnant to the estate granted.

The grantor, Joseph Smith, at the time of the execution of the deed in question, was, as is admitted in the record, a man some 71 years of age, and possessed of a large estate. He was a farmer, and had been in quite poor health for a number of years, and was confined to his house for the last six months before his death. He had eight children, six of whom were living. A son, John H., had died some 20 years before, leaving three children, who were all living at the time of the execution of this deed. His daughter Sarah had died some 10 years before, also leaving three children, who were living at the date of the deed.

This deed was drawn by May Armstrong, a granddaughter, from a draft made by the grantor, and under his direction. Eleven other deeds were also drawn at the same time. The grantees in these deeds were the six children of the grantor and his six grandchildren. These deeds were all drawn from the same draft; the only difference in them being the names of the grantees and the description of the property. Joseph Smith examined all of them after they were drawn. They were all executed by the parties named therein, and delivered at the same time as the deed to Thomas J. Smith.

At the death of the grantor all his children then living were married and had children, except Thomas J. Smith and James P. Smith. None of the grandchildren had issue at that time.

At the death of the grantor he was possessed of real estate valued at $36,300, exclusive of the real estate conveyed by these 12 deeds, and his personal estate amounted in value to over $47,000.

Thomas J. Smith and wife had occupied these lands since 1872 or 1873, and had the use and profits therefrom since that time, and the other children had the use and profits of the lands so conveyed to them by said deeds. Thomas J. Smith was married to Eusebia in 1869, and during the years after their marriage lived near the grantor.

That Thomas J. Smith and James P. Smith and the grandchildren mentioned in these deeds had no children was well known to Joseph Smith, the grantor, at the time of the execution and delivery of these deeds. None of the deeds executed at that time were ordinary deeds poll, but were executed also by the grantees. The consideration expressed is—

"The sum of one dollar, and in further consideration of natural love and affection, and of promises made by the parties of the first part to the party of the second part, and of improvements made on the land herein described by the party of the second part, and for services rendered to the parties of the first part by the party of the second part."

These circumstances and the recitals in the deed must have weight in construing this instrument.

Is it to be presumed, taking into consideration all the surrounding circumstances, that Joseph Smith intended that these lands should revert to his estate upon the death of the grantees without issue? This does not seem probable, in view of the fact that at the time of the execution and delivery of these deeds eight of the grantees had no children.

The deed is, in its terms, plainly contradictory. It cannot be construed as one harmonious whole. The *haben-dum*, is, as contended by defendants' counsel, repugnant to the granting clause, and the condition or agreement following is repugnant to the *habendum*, and both are repugnant to the grant or premises, and the deed cannot

be upheld so as to give effect to all its parts. The granting clause is:

"Have granted, bargained, sold, remised, released, and quitclaimed, and by these presents do grant, bargain, sell, remise, release, and quitclaim, unto the said party of the second part and to his heirs for the use, benefit, and support of himself and his family, and the proper education of his children, the following described land," etc.

Had the granting clause been followed by the usual *habendum* found in quitclaim deeds, no one would deny that it conveyed an estate in fee; but it is insisted on the part of the plaintiff that there are words of limitation in the *habendum* which must control the granting clause, and that such words limit the estate for life in the grantee, Thomas J. Smith, and at his death it must revert to the grantor.

If this construction is given this deed, in our opinion, it would entirely defeat the intention of the grantor. That he intended to convey these lands absolutely and in fee to his children and grandchildren there can be no doubt. That he desired his children and grandchildren to retain possession of these lands, and hold the title thus conveyed, and not dispose of them, is equally evident. But that he intended, if any of these children or grandchildren died without issue, to deprive the *family* left surviving of every dollar of the estate, cannot be gathered from the surrounding circumstances, or from the language employed in the deed itself. The word "family," used in the deed, has some significance. The only family of James P. and Thomas J. Smith, the two sons, was the wife. It is also apparent that the only family of the six grandchildren was husband or wife.

The record does not disclose whether these grandchildren were all married, but it is disclosed that none of them had issue; and yet in each of these deeds it is expressly stated that the conveyence is,—

"For the use, benefit, and support of himself and his family,"—

And the covenant upon the part of the grantee contained in the deed is—

"That the rents, profits, and income therefrom, so far as the same shall be necessary, shall be during his said life-time devoted to the support of his family and the proper and suitable education of his children," etc.

We are of the opinion that it was the intention of Joseph Smith to convey this land to Thomas J. Smith in fee. We are also of the opinion that the granting clause in the deed conveyed the fee to Thomas J. Smith, and the *habendum*, being repugnant to the granting clause, must be rejected. Thomas J. Smith being vested in fee under this deed, it passed to the defendant Eusebia Smith under the deed from the husband. This rule is fully sustained by the authorities above cited. We need not discuss the other questions raised, as this must dispose of the case.

The judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.