PUTNAM *v.* PERE MARQUETTE RAILROAD CO.

1. DEEDS—DESCRIPTION—HABENDUM CLAUSE—CONDITIONS.

Under the provisions of a deed reciting that certain property was purchased by the grantee, a railroad company, for a gravel pit, conveying "all gravel, sand, stone and earth" of the property described, and reserving to the grantors the right to cultivate such portion of the surface as should not be in use by the grantee, which should not be liable for damage to growing crops, also containing a clause requiring the grantee to place the top soil not fit for its use in the cut last made and to level it off in condition for plowing, and not to excavate below the drainage system, the habendum clause continuing, "to have and to hold the said gravel, sand, stone

and earth as above described," the grantor retained the fee subject to the rights of the grantee in the gravel, and subject to the use of the premises as a gravel pit.

2. SAME—CONSTRUCTION.

In the construction of deeds or other contracts, the primary end to be attained, if possible, is to ascertain the intention of the parties, and although as a general rule if the habendum clause is repugnant or contrary to the granting clause it is void, the rule is subject to qualification. Thus, when it is impossible to determine from the deed and the surrounding circumstances that the grantor intended the habendum to control, the granting words will govern; but if it clearly appears that the grantor intended to enlarge or restrict the granting clause by the habendum the latter controls.

3. SAME.

It is also a rule of construction, as a last resort, subject to other methods of ascertaining the true intent of the parties, that repugnancy between different clauses must be resolved in favor of the first.

4. EQUITY—WASTE—INJUNCTION—JURISDICTION—ENFORCEMENT OF CONDITIONS IN DEED.

Equity has jurisdiction, on complaint of the holder of the fee, to enjoin a permanent injury to soil of the freehold, in violation of conditions of a deed conveying a gravel pit, by the grantees refusing to place the top soil where the deed required it to be placed.

5. SAME—BILL OF COMPLAINT—DEMURRER.

On demurrer to such bill, the objection could not be sustained that the bill did not aver that the defendant was removing top soil not fit for its use, it appearing that the averments of the bill charged defendant with removing the top soil and otherwise acting in violation of the conditions of the deed.

Appeal from Kent; Perkins, J. Submitted January 13, 1913. (Docket No. 78.) Decided March 20, 1913.

Bill by Reuben W. Putnam and another against the Pere Marquette Railroad Company for an accounting and injunction against removing the top soil from premises used as a gravel pit. From an order overruling a demurrer to the bill of complaint, defendant appeals. Affirmed.

*Norris, McPherson & Harrington* (*Bills, Parker & Shields*, of counsel), for appellant.

*Smedley, Linsey & Lillie,* for appellees.

Complainants, by deed, conveyed to defendant certain rights in a piece of real estate to be used as a gravel pit. The material portions of the conveyance follow:

"Witnesseth: That the said parties of the first part, for and in consideration of the sum of three thousand and thirty-eight and $\frac{40}{100}$ dollars ($3,038.40), to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold, remised, released, aliened, and by these presents grant, bargain, sell, remise, release, alien and confirm unto the said party of the second part and its successors forever all gravel, sand, stone and earth on the following certain pieces or parcels of land. [Here follows the description.] The above-described property is purchased as and for a gravel pit and the first parties hereby without further consideration grant to the second party the right to extend its tracks westerly over the low ground beyond the gravel pit above described so that cars may be run past the pit to enable second party to take the gravel out of the westerly end of said gravel pit to advantage. First parties hereby reserve the right to cultivate such portion of the surface of said property as shall not be in use by said second party, its successors or assigns, but second party shall have the right to use any portion of said property at any time for the removal of material therefrom, and shall not be liable for any damage to growing crops caused by such use. First parties agree to pay and discharge all taxes assessed on said property in consideration of the use of the same. Second party agrees that in removing said material, the top soil not fit for its use shall be thrown off in the cut last made and leveled off reasonably level so it can be plowed, and further agrees to maintain a farm crossing across its tracks substantially where it now is and also keep a roadway across the cutting of its gravel pit in connection with said crossing. The excavation in said gravel pit is not to be so low as to prevent its drainage into the ditch southwesterly of said gravel pit. Together with all estate, right, title, interest and demand whatsover of the said parties of

the first part either in law or equity of, in and to the above bargained gravel, sand, stone and earth, to have and to hold the said gravel, sand, stone and earth, as aboved described, unto the said party of the second part and to its successors and assigns forever."

Then follow covenants of warranty and seisin. This deed was executed in 1901, and the defendant proceeded to remove the gravel from the premises described.

On October 15, 1911, complainants filed their bill of complaint against defendant, in which it is alleged:

"(3) Your orators further show that the said Pere Marquette Railroad Company has excavated and carried away large quantities of gravel, but instead of removing the top soil, so that it could be replaced on the land according to the agreement, they have taken, not only the gravel underneath the rich soil, but have taken the top soil and everything and hauled it away, and now continue to do so; that your orators have requested at various times that said defendant refrain from taking off the top soil, and requested them to carry out their contract in accordance with said deed, and the officials of the railroad company have said that they would see to it that no more of the top soil is carried away, but your orators aver that the workmen of said railroad company do not refrain from taking away the top soil, but continue to and are now continually taking away the top soil with the gravel.

"(4) Your orators further show that this is against the just rights of these complainants, and is causing irreparable injury to said farm; that said rich top soil is a thing that cannot be bought upon the market, and your orators know of no place where they can buy said material and haul it upon their land; that said top dressing or top soil is of great value, and is of the value of more than $100, to wit, of the value of $1,000; and that if said defendant continues to remove said top soil these complainants will be damaged to a much larger extent, to wit, the sum of $5,000; and that the gravel bed, after the railroad company has taken off the gravel, is worthless for farming purposes, because it has no rich top soil in which to plant crops, and unless the railroad company is restrained by injunction of this court they will continue to remove the top soil with their gravel and thus ruin said land for said purposes.

" (5) Your orators further say that this is part of an ordinary farm, and unless said land is left with the top soil on it it is no good for farming purposes, and cannot be used for anything else."

The prayer is for an accounting and an injunction.

To the bill of complaint defendant interposed the following demurrer:

" (1) If complainants are entitled to any relief on account of the facts alleged in their bill of complaint, they have a full, complete, and adequate remedy at law.

" (2) The facts alleged in complainants' bill of complaint do not show any breach by the defendant of its agreement contained in the deed, a copy of which is attached to said bill of complaint.

" (3) Under the provisions of the deed, a copy of which, marked 'Exhibit A,' is attached to and made a part of said bill of complaint, the defendant undertook, on consideration that the complainants should pay the taxes upon the property described in said deed, that in removing the gravel, sand, stone, and earth conveyed to it by said deed the top soil unfit for defendant's use should be thrown off into the cut last made; and it is not averred in said bill of complaint that the defendant has removed, or contemplates removing, any soil unfit for its use.

" (4) By the provisions of the said deed, a copy of which, marked 'Exhibit A,' is attached to and made a part of said bill of complaint, the complainants undertook and agreed, as consideration for the right to cultivate that portion of the property conveyed by said deed not used by the defendant, to pay and discharge all taxes assessed on the property conveyed to the defendant by the said deed; and in their said bill of complaint the complainants do not show that they have paid, or offered to pay, the taxes assessed upon the said property."

The demurrer was overruled, and defendant appeals.

BROOKE, J. (*after stating the facts*). It is the contention of defendant that the instrument under consideration conveys to it the fee; and that complainants reserved only the right to cultivate during their lives, for an agreed rental (payment of taxes), such portion of the land described in the deed as should not be used by the defendant.

For an interference with this right of cultivation, it is urged that the law affords an adequate remedy. Complainants' position is that the deed conveys to defendant only the gravel lying between the top soil and a point down to which this land could be drained, as specified in the deed; that after the gravel has been removed the defendant has no further title to or interest in the premises. This contention involves the further proposition that the fee remains in the complainants; and that the alleged unlawful removal of the top soil constitutes such an injury to the inheritance as to warrant interference by a court of equity.

The language of this instrument is peculiar and ambiguous; but a careful perusal of the whole paper convinces us that it was the intention of the grantors to sell, and of the grantee to buy, only the gravel lying between the top soil and the point fixed in the deed. Several considerations lead to this conclusion. In the first place, the deed recites that "the above-described property is purchased as and for a gravel pit."

While the granting clause conveys "all gravel, sand, stone and earth" upon the description, the instrument recites that in removing the gravel "the top soil not fit for its [grantee's] use shall be thrown off in the cut last made and leveled off reasonably level so it can be plowed"; and, further, that "the excavation in said gravel pit is not to be so low as to prevent its drainage into the ditch southwesterly of said gravel pit." The habendum clause is significant. The grantee is to have and to hold "the said gravel, sand, stone and earth, *as above described.*"

It seems to us that the conclusion is irresistible that the parties intended that, as fast as the gravel was removed, the grantors should have the right to resume possession and cultivation of that portion of the premises denuded of its gravel; and when all the gravel (within the limits fixed by the deed) had been removed the interest of the grantee in the property should cease. It is to be noted and again emphasized that the grantee takes to itself, its

successors and assigns forever, not the *premises* above described, but " the said gravel, sand, stone, and earth, as above described."

In the construction of deeds or other contracts, the primary end to be attained is, if possible, to ascertain clearly the intention of the parties. *Smith* v. *Smith*, 71 Mich. 633 (40 N. W. 21). Mr. Justice Cooley, speaking for the court in *McConnell* v. *Rathbun*, 46 Mich. 305 (9 N. W. 426), said,

" All grants must be construed reasonably and in the light of the surrounding circumstances."

While the general rule is well settled that, when the habendum is repugnant and contrary to the granting clause, it is void (see cases cited in *Smith* v. *Smith*, *supra*), that rule is subject to qualifications, and is not always to be invoked. In *Powers* v. *Hibbard*, 114 Mich. 533, at page 552 (72 N. W. 346), it is said:

"But these rules must be understood and taken in connection with other rules of construction, as, where the grant is uncertain or indefinite concerning the estate intended to be vested in the grantee, the habendum performs the office of defining, qualifying, or controlling. *Sumner* v. *Williams*, 8 Mass. 162 [5 Am. Dec. 83]. Again, where it is impossible to determine from the deed and the surrounding circumstances that the grantor intended the habendum to control, the granting words will govern; but, if it clearly appears that it was the intention of the grantor to enlarge or restrict the granting clause by the habendum, the latter must control."

This court, speaking through Justice Montgomery, again announced its policy in the case of *Mullreed* v. *Thumb*, 116 Mich. 440 (74 N. W. 710), in the following language:

" The general rule is that the intention of the parties to an instrument is to be ascertained from a reading of the entire instrument.  *  *  *  Another rule is that a repugnancy between different clauses of the deed must be resolved in favor of the first. This latter rule is usually invoked when there has been an attempt to limit the grant-

ing clause by the habendum, or where there is an attempt to except something specifically granted. This rule should be acted on only as a last resort, and generally the first inquiry is: What was the intention of the parties as expressed by the instrument? *Bassett* v. *Budlong,* 77 Mich. 338 [43 N. W. 984, 18 Am. St. Rep. 404]. It is true that courts have in some cases subordinated this rule of construction to that which gives preference to the first expression of the grantor, and have done so in some cases at the expense of sacrificing the intent of the parties as plainly expressed. * * * This court has, however, not so applied this latter rule as to subvert the intent of the parties, when plainly expressed "—citing cases.

See, also, *Moran* v. *Lezotte,* 54 Mich. 83 (19 N. W. 757); *Waldron* v. *Railway Co.,* 55 Mich. 420 (21 N. W. 870); *Martin* v. *Cook,* 102 Mich. 267 (60 N. W. 679); *Wilson* v. *Terry,* 130 Mich. 73 (89 N. W. 566); *Bolio* v. *Marvin,* 130 Mich. 82 (89 N. W. 563); *Negaunee Iron Co.* v. *Iron Cliffs Co.,* 134 Mich. 264 (96 N. W. 468); *Sharp* v. *Sharp,* 148 Mich. 278 (111 N. W. 767); 18 Cyc. p. 618, and notes.

Assuming, then, that complainants are still the owners of the fee, has equity jurisdiction of the matter?

The averment in the bill is, in effect that the defendant, by wrongfully removing the rich top soil, and by wrongfully refusing to transfer it to the cut last made and level it off fit for husbandry, as required by the terms of the deed, is inflicting a permanent injury to the freehold. We think the bill states a case for equitable relief under the following decisions: *Rhoades* v. *McNamara,* 135 Mich. 644 (98 N. W. 392), and cases there cited; *Harbor Springs Lumber Co.* v. *Emmet Circuit Judge,* 160 Mich. 497 (125 N. W. 390); 22 Cyc. p. 825 *et seq.*

It is contended by the defendant that the bill does not aver that the defendant is removing top soil *not fit for its use;* that it is only such soil that it, by the terms of the instrument, is compelled to throw off into the cut last made; and therefore that no breach is alleged. We think the instrument is open to the construction that it was

agreed at the time of its execution that the top soil was not fit for grantee's use; but whether this be true or not there can be no doubt that the bill, in effect, avers, in section 3, that the taking of the top soil by defendant is contrary to the contract. Upon the coming in of the answer and the taking of proofs, this question can be determined.

The order overruling the demurrer is affirmed, with costs.

STEERE, C. J., and MOORE, McALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.