KENDRICK *v.* LOUK.

1. EASEMENTS—PATH—RESERVATION—DEEDS.

Where the owner of a plat on St. Clair river reserved a pathway along the water front, 20 feet distant therefrom, extending across all the lots sold, between two rows of trees, and joining on a similar walk established by an owner of adjacent lots, and where the path was also excepted or reserved from all the deeds of the platted lots, and used by the several proprietors in common, and where one of the conveyances declared that the strip was re-

served for the use of the vendor and his grantees, and was shown on the recorded plat, it will be construed as an easement for the benefit of all the grantees, and not of the original grantor alone.

2. SAME.

A grantee of the path or strip so reserved, having known of the use to which it was put for about two years, and having used it in a similar manner, was not a bona fide purchaser under a deed which referred expressly to the prior grants, where it appeared that she purchased property of the original grantor by a conveyance excepting the same strip "for travel purposes."

Appeal from St. Clair; Tappan, J. Submitted June 10, 1912. (Docket No. 49.) Decided May 28, 1913. Rehearing denied July 18, 1913.

Bill by Frederick C. Kendrick and others against Elizabeth B. Louk and others to restrain defendants from obstructing an easement. From a decree for complainants, defendants appeal. Affirmed.

*Frederick B. Brown,* for complainants.

*Moore & Wilson,* for defendants.

BIRD, J. The thing sought to be accomplished by this chancery proceeding is to permanently enjoin the defendant and her husband from erecting a summer cottage on or over a footpath five feet in width, extending along the north bank of the St. Clair river. The relief prayed for was granted by the chancellor, and the defendants have appealed, claiming that the case made by the complainants does not justify the relief granted.

The records show that in the year 1901 George A. Phelps was the owner of a farm of 80 acres situate in Clay township, St. Clair county, the south end of which bordered upon the north channel of the St. Clair river, having a frontage thereon of 800 feet. Two hundred feet north of the river the 80 is trav-

ersed from east to west by the Rapid Railway System. A portion of that part of the 80 lying between the railway and the river was in 1901 platted into lots, and subsequently the remainder was platted and the lots sold. The original plat shows a five-foot path, located, as is stated in some of the conveyances, about 20 feet from high-water line, as indicated by the plat. The 800 feet of frontage was disposed of to several grantees by separate conveyances, and the same were duly recorded. Included among these grantees are the complainants and defendant Elizabeth Louk. In all of the deeds the five-foot strip is referred to in varying terms in the following manner:

(1) "Also first parties reserve the use of five feet of the river frontage of said land for a footwalk for travel purposes."

(2) "Reserving to first parties that the building, and shore line of said lands shall be governed by the plat hereto attached, and said first parties also reserve the walk five feet wide between two rows of trees now established."

(3) Fifty feet of frontage is conveyed and "also a right of way of a five-foot walk across the said land, which is hereinabove reserved."

(4) "Saving and reserving a strip five feet wide across and lying between two rows of trees, now established, about twenty feet from high-water mark; said five-foot strip being part of a walk for use of first parties and their grantees."

(5) "Excepting a strip of land five feet wide lying between two rows of trees hereinafter referred to. And also as appurtenant to the above-described parcel, a right of way for purposes of access thereto over said strip of land five feet wide lying between two rows of trees, now established, about twenty feet from high-water mark and running across the south part (of said eighty). * * *"

(6) "Excepting a strip of land five feet wide lying between two rows of trees now established about twenty feet from high-water mark and running east and west across the lands hereby conveyed."

(7) "Excepting a strip of land five feet wide lying

between two rows of trees now established about twenty feet from high-water mark and running east and west across the lands hereby conveyed."

(8) "Excepting a strip of land five feet wide lying between two rows of trees now established, about twenty feet from high-water mark and *run* east and west across the lands hereby conveyed, together with, as appurtenant to said lands, the use of the rights of way mentioned in deed recorded in Liber 161, page 533."

(9) "A strip of land twenty feet wide running from the right of way of the Detroit and River St. Clair Railway to the St. Clair river and bounded east by lands conveyed to Dixon, west by lands sold to Van Loon; also a strip of land twenty feet wide running along next south of the right of way of said railway and across the east half of the west half and the west half of the east half of Private Claim 190. Said strip being conveyed for the purpose of conveying a right of way for the use of second party and of any and all grantees of first or second party of any lands lying between said railway and St. Clair river in said east half of west half and west half of east half of said Private Claim 190, for ingress or egress to said land conveyed or to be conveyed to said grantees to and from the said railway, river or the public highway, or the common frontage on said river."

(10) "The party of the first part reserves the right that the building and shore line shall be governed by the plat and reserves a public walk five feet between the rows of trees now established, and grants the use and privilege of the walk and roads leading to and from the public highway."

(11) The following exception appears in the conveyance to defendant: "Excepting a strip of land five feet in width across said land near the margin of St. Clair river for travel purposes."

In August, 1911, after the said Phelps had disposed of all of said frontage, he made a conveyance to defendant Elizabeth Louk, as follows:

"A strip of land five feet wide extending across the (eighty) intending to convey any and all lands ex-

cepted and reserved in any deeds heretofore given by me in Private Claim 190 south of railway company and all easements and rights appurtenant thereto. * * *"

The question arises, under these conveyances: Have complainants an easement to use the five-foot path across defendant's lot? Both parties agree that by the several conveyances an easement was created to use the footpath. The defendants contend that it was reserved for the sole use of Phelps, while the complainants insist that it was reserved for both Phelps and his grantees of the other lots.

It is a rule of construction that all grants must be construed reasonably and in the light of the surrounding circumstances. *McConnell* v. *Rathbun,* 46 Mich. 303 (9 N. W. 426) ; *Newaygo Manfg. Co.* v. *Railway Co.,* 64 Mich. 114 (30 N. W. 910) ; *Smith* v. *Smith,* 71 Mich. 633 (40 N. W. 21) ; *Wilson* v. *Terry,* 130 Mich. 73 (89 N. W. 566).

If we apply this rule to the facts disclosed by the record, it becomes reasonably certain that complainants' contention is the correct one. Phelps, the common grantor, caused the lands lying between the river and the railway to be surveyed and platted in January, 1901. This plat shows a reservation along the river for dock purposes. It also shows a reservation for a 20-foot roadway extending north from the dock to the railway and another of like width parallel with the railway. It further shows a "promenade" 5 feet in width extending along the bank of the river about 20 feet from high-water mark; it being the intention, as appears by the plat and conveyances, to locate it between two rows of trees, although the proof shows that only one row was set out. The evident purpose of doing all of these things was to make the place attractive and convenient as an inducement to a sale of the lots for summer homes. It is incredible that Phelps made all these reservations for his sole benefit.

That he should have reserved an easement over these lots for a footpath and impressed upon it the idea of permanency by locating it between rows of trees and designating it as a "promenade" for his sole benefit is not in accord with his general scheme and purpose of platting the property for the purpose of making a sale of it. When we consider his treatment of the property in connection with the conveyances and their reservations and the provision in conveyances 2 and 10 "that the building and shore line shall be governed by the plat," the express grant of the right in conveyance 10, and his express declaration in conveyance 4 that "said five-foot strip being part of a walk for use of first parties and their grantees," it clearly indicates an intention upon the part of Phelps to create an easement, not only for himself, but for his grantees, of the other lots on the plat.

This view is further strengthened by the fact that, prior to the time Phelps platted his land, his neighbor Reynolds, adjoining him on the east, had already platted his land for summer homes and laid out a five-foot path bounded by two rows of trees. The one established by Phelps was so laid out as to be a continuation of the one laid out by Reynolds.

But it is argued that defendant is a bona fide purchaser, and that she was not obliged to look beyond her deed to determine her rights. Her deed of the lot in question advises her of the five-foot path "for travel purposes," and her deeds from former purchasers on the same plat advised her that others had rights in the path. For two years prior to her purchase of the lot in question, she lived a few feet west of this plat, and not only used the path herself, but knew that others used it. Under these circumstances, we think she is in no position to make the claim that she was a bona fide purchaser without knowledge of the actual situation.

The finding of the chancellor that the proposed construction would be an obstruction to the five-foot path appears to be justified by the testimony, and his decree will be affirmed. Complainants will recover their costs in both courts.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.