HESS v. HAAS.

1. LIFE ESTATES—ANTENUPTIAL CONTRACT — CONSTRUCTION — AM-
BIGUITY — PRACTICAL CONSTRUCTION OF PARTIES MAY BE CON-
SIDERED.

In construing an instrument intended as an antenuptial
contract, but drawn up in the form of a life lease on an
ordinary blank form of lease, many of the provisions of
which are inapplicable, rendering it ambiguous, the court
must be guided not only by the language employed, but
must look to the purpose sought to be accomplished, and,
owing to the ambiguity, may consider the practical con-
struction placed upon it by the parties themselves.

2. SAME—FORFEITURE FOR SUBLETTING HAS NO PLACE IN LIFE
ESTATE CONVEYED TO WIFE.

Where it is apparent, from the purpose of an instrument
intended as an antenuptial contract but in form a lease,
and from the construction placed thereon by the parties
themselves, that the prospective husband intended to con-
vey a life estate in his prospective wife, and that it was
not intended that she must personally live upon the farm,
a provision for its forfeiture in case she should sublet
without his consent has no place therein, and, therefore,
is not binding upon her.

BIRD, STEERE, and WIEST, JJ., dissenting.

Appeal from Monroe; Root (Jesse H.), J.    Sub-
mitted October 9, 1924.    (Docket No. 47.)    Decided
April 24, 1925.

Bill by Minnie Richards Hess against William F.
Haas, executor of the last will of James Hess, de-
ceased, and others for permission to sell, assign, and
transfer a life lease, and to enjoin defendants from
interfering with her possession under said lease.    De-
fendants filed a cross-bill to terminate said lease.

From a decree for plaintiff, defendants appeal. Affirmed.

*George S. Wright* and *Oliver J. Golden,* for plaintiff.

*Ira G. Humphrey* and *John O. Zabel,* for defendants.

Bird, J. (*dissenting*). James Hess was, in his lifetime, the owner of a farm of 96 acres, in the township of Dundee, Monroe county. On the 17th day of September, 1913, he leased the same to plaintiff, and on November 17th of the same year he married her. They lived together for a time, but trouble arose, and James Hess obtained a divorce from her in February, 1917. In awarding plaintiff alimony in the divorce case the court did not disturb the lease in question.

In May, 1922, James Hess died, leaving a will, in which he devised the remainder of the 96 acres to certain relatives who are made defendants herein with the executor.

The material portions of the lease, after describing the property, are as follows:

"for the term of her natural life from and after my death on the terms and conditions hereinafter mentioned, to be occupied for any legal purpose. Provided that if any default shall be made in any of the covenants herein contained then it shall be lawful for the said party of the first part, his certain attorney, heirs, representatives and assigns, to re-enter into, repossess the said premises, and the said party of the second part, and each and very other occupant, to remove and put out. And the said party of the second part does hereby hire the said premises for the term of her natural life as above mentioned and does covenant and promise to pay to the said party of the first part, his representatives and assigns, for the rent of said premises for said term the sum of love and affection, other considerations and one dollar and payment of all taxes.

"Said party of the second part further covenants that she will not assign nor transfer this lease, or

sublet said premises, or any part thereof, without the written assent of said party of the first part.   *   *   *

"And the said party of the first part does covenant that the said party of the second part, on paying the aforesaid installments and performing all the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid.

"The covenants, conditions and agreements, made and entered into by the several parties hereto, are declared binding on their respective heirs, representatives and assigns."

Following the death of James Hess, plaintiff leased the premises to one Laskey for a term of three years, and he in turn permitted one Groesdefon to work the farm on shares.    The remaindermen learning of this declared a forfeiture of the lease on the ground that it violated the covenant against subletting, and gave plaintiff and her subtenants notice thereof, and demanded the possession thereof.    Plaintiff then filed her bill, praying for a decree allowing her to sell, assign, and transfer the lease, and for an injunction to prevent defendants from interfering with her possession.    Defendants answered and filed a cross-bill in which they asked to have the lease set aside and declared void.

The matter was heard and the chancellor found that the covenant against subletting had been broken, but it was his opinion that such provision in a life lease was void as an unreasonable restraint upon alienation of interests in real estate, and for the further reason that it was impossible of performance because the consent of James Hess could not be obtained.

The first reason assigned, that the stipulation in the lease was void because in unreasonable restraint of alienation, cannot be sustained.    We are not aware of any statute, nor of any principle of law, which would support such a conclusion, and we think that the second reason assigned by the court is equally un-

tenable. The lease with its covenants and agreements was made binding upon the respective heirs, representatives, and assigns of the parties. Had the lease been operative during the life of James Hess he could, without question, have declared a forfeiture for a violation of the covenant involved. This right being reserved to his successors in title, there is no good reason why they cannot exercise the same right. And if James Hess, in his lifetime, could consent to the subletting, his devisees are now invested with the same right.

It has been repeatedly held by this court that the clause against subletting is a fair and reasonable one. *Werthemeir* v. *Wayne Circuit Judge,* 83 Mich. 56; *White* v. *Huber Drug Co.,* 190 Mich. 215.

In the case last cited it was said:

"The purpose of such a stipulation is to reserve to the lessor the right to say who shall occupy the premises; and where the right is clearly reserved to the lessor, he may insist upon it, if he wishes to, without regard to the qualifications of the proposed assignee."

In this case, also, the lessor died, and the forfeiture was insisted upon by her successors, the same as here.

It is held that where a lease contains this covenant a violation of it works a forfeiture of the lease, and may be taken advantage of by the lessor. *Wray-Austin Machinery Co.* v. *Flower,* 140 Mich. 452; *Miller* v. *Havens,* 51 Mich. 485; *Marvin* v. *Hartz,* 130 Mich. 26.

But counsel argue that these rules apply only to term leases and not to life leases. In *Lariverre* v. *Rains,* 112 Mich. 276, the same rule was applied to a life lease. In that case the wife conveyed to her husband a parcel of land for his life "in case he lives with her as long as she shall live, and sees fit to occupy the same as a residence and home." This provision was violated by the husband, and the court declared

the covenant was broken, and the right conveyed was terminated.

The decree of the trial court should be reversed, and one entered in accordance with these conclusions.

Steere and Wiest, JJ., concurred with Bird, J.

Sharpe, J.    The so-called life lease executed by James Hess in his lifetime to the plaintiff before their marriage was intended to operate as an antenuptial agreement.    It is unfortunate that the intention of the parties was not more clearly expressed therein. An ordinary blank form of lease was used.    Many of its provisions are inapplicable.    There was no hiring of the premises.    The provision as to payment reads:

"And the said party of the second part does hereby hire the said premises for the term of her natural life as above mentioned and does covenant and promise to pay to the said party of the first part, his representatives and assigns, for the rent of said premises for said term the sum of love and affection, other considerations and one dollar and payment of all taxes."

While under its terms plaintiff would have been entitled to immediate possession, the parties did not so construe it.    Mr. Hess retained possession after the decree of divorce was granted in February, 1917, until his death in May, 1922, after which plaintiff took possession.    In the decree of divorce, she was awarded $250, a part of the household goods, and the husband's interest in a house and lot in Dundee, owned jointly and occupied by them as a homestead. It also provided that the lease in question—

"shall remain in full force, each of the parties herein to receive the benefits therefrom in accordance with all the terms and conditions therein named."

These provisions were in lieu of plaintiff's dower or

other interest in any of the property owned by her husband.

In determining the rights of the plaintiff under the instrument, in form a lease, we must not only be guided by the language employed, but must look to the purpose sought to be accomplished, and, if in doubt, owing to the ambiguity incident to the inapplicable provisions therein, we may consider the practical construction which the parties have themselves placed upon it. These considerations lead me to the conclusion that by it Mr. Hess intended to convey to the plaintiff a life estate in this land. The provision for forfeiture on her part, should she sublet without consent of the lessor, had no place in such an instrument. It does not appear that he was living on this land at the time the instrument was executed, nor that they lived on it during their married life. The home in which they lived in Dundee was given to her in the divorce decree. It was not in the minds of the parties that she should work this land. She had no children to assist in doing so. When the instrument is considered in the light of the circumstances under which it was executed, in view of its inconsistent and inapplicable provisions, and the intent of the parties executing it, as evidenced by the construction they placed upon it and the provision relative to it in the decree of divorce, it is apparent that the parties to it did not intend that she must personally live upon the land and hire men to work it for her in order to retain her interest therein.

The maxim, "Equity regards substance and not form," is here applicable.

"In equity the court adapts its relief to the exigencies of the case in hand, and in so doing form always gives way to substance, or, as the principle is expressed in the shape of an equitable maxim, 'equity looks through forms to substance,' or 'equity regards the substance and not the form of a transaction or

proceeding.' The meaning of this maxim is that the rights of parties are not to be sacrificed to the mere letter, but that the intent or spirit of a contract, agreement or transaction will in equity at least be the paramount consideration. So, in the case of written instruments, the form is not always controlling, but courts of equity will seek rather to discover and carry into effect the real intention of the parties and to enforce it according to the sense in which it was understood as shown by the subsequent acts and conduct of the parties." 10 R. C. L. p. 380.

"In the construction of a written instrument, equity always attempts to get at its substance, and to ascertain, uphold, and enforce the rights and duties that spring from the real intention of the parties. In doing so, while it will of course not change the words of the instrument, the court of equity will look into all the circumstances under which it was made, in order to determine the proper meaning of the transaction. It will do this not only to sustain a just claim, but to defeat an unlawful demand." 21 C. J. p. 204.

Many cases are cited in support of the text. The following Michigan cases are instructive: *Waldron* v. *Murphy*, 40 Mich. 668; *Stuart* v. *Worden*, 42 Mich. 154; *Morgan* v. *Railroad Co.*, 57 Mich. 430; *Monfort* v. *Stevens*, 68 Mich. 61; *Smith* v. *Smith*, 71 Mich. 633; *Thompson* v. *Andrus*, 73 Mich. 551; *Schulz* v. *Brohl*, 116 Mich. 603; *Wilson* v. *Terry*, 130 Mich. 73; *Putnam* v. *Railroad Co.*, 174 Mich. 246; *Kendrick* v. *Louk*, 175 Mich. 130; *Murray* v. *Kator*, 221 Mich. 101.

The case of *Lariverre* v. *Rains*, 112 Mich. 276, cited by Mr. Justice BIRD, is, I think, clearly distinguishable. The instrument there under consideration was not in the form of a deed or a lease. Mr. Justice MOORE denominates it simply as "a paper reading as follows:" etc. The provision for the husband was:

"The use and occupancy as long as he shall live, in case he lives with her as long as she shall live, and

sees fit to occupy the same as a residence and home," etc.

It also provided:

"It being expressly understood and agreed that the right to use and occupy, as above stated, is intended to be a life interest, and not transferable."

It was held that, as the husband "had ceased to occupy the land" and "had attempted to convey" his estate before the suit was brought by him, though forbidden to do so by the terms of the instrument, his life estate was terminated. His right to the use and occupancy of the land was held to be conditional on his occupying the same as a residence and home.

In my opinion, the decree should be affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, MOORE, and FELLOWS, JJ., concurred with SHARPE, J.