This is a suit on a fire insurance policy, originating in a justice of the peace court. Judgment was there rendered in favor of plaintiff and the case appealed to the Circuit Court of Butler County. On trial in that court to a jury a verdict and judgment in favor of plaintiff was rendered in the sum of $250. From this judgment defendant has appealed.
The petition alleges that on the 25th day of May, 1933, in consideration of a premium of $8.05, paid by plaintiff, defendant issued its policy in the sum of $900, insuring plaintiff's household goods against fire; that on the 23rd day of June, 1933, plaintiff received notice from defendant that it would cancel said policy of insurance, said cancellation to take effect five days after receipt of said notice, and therefore said policy terminated on June 28, 1933; that while said policy was in force, the dwelling house in which was located said household goods, caught fire and resulted in destruction and damage to said property in the sum of $250, for which judgment was prayed.
Defendant answering admitted the issuance of the policy as alleged and the payment of the premium by plaintiff; that it issued notice of cancellation of the policy to take effect in five days, in accordance with the terms of said policy, and upon condition that the excess premiums, if any, in excess of the prorata premium for the unexpired term would be returned to the insured upon demand; that plaintiff received the notice of cancellation on June 23, 1933; that plaintiff voluntarily surrendered said policy for cancellation on said day and received from the local agent the full amount of the premium theretofore paid by him; that said policy was cancelled by defendant on the date of said voluntary surrender, which was five days prior to the date of the fire and loss for which plaintiff sues; that said policy was not in force and effect on the date of plaintiff's alleged fire and loss. No reply was filed.
Upon the issues thus made the case proceeded to trial. The evidence on the part of plaintiff in regard to receiving the notice of cancellation and surrender of the policy was as follows:
"Shortly after I took out this policy, I received a notice from the company that the policy would be cancelled. I received this notice by registered mail. It was on the 23rd day of June, 1933. When I went to the post office that morning to get my mail, this *Page 941 
registered letter from the company was there. I went up to George Knower's, the insurance agent who wrote the policy, and asked him what to do about it, and he said there was nothing he could do but cancel the policy. He went with me to the post office, and I took the letter out of the post office, and it was a notice of cancellation. —
"And when I saw that it was a notice of cancellation I said to George, `Isn't there some way that I can get this carried over until I can get some other insurance?' Mr. Knower told me there was nothing he could do only cancel the policy. He said that all he could do was to cancel the policy and me take the premium money back. And I asked him if I couldn't carry it over five days until I got other insurance to cover my furniture, and he said `No.' Acting upon that, what he said, I surrendered the policy to the office and received back the money that I had paid for the premium. I did this on the 23rd day of June, 1933, the same day I received the notice. I told Mr. Knower that I didn't want to surrender the policy until I had time to get other insurance. I knew there was a provision in the policy that required the company to give me five days notice before they could cancel the policy, and I called Mr. Knower's attention to this."
On cross-examination he testified as follows: "I have had considerable business with insurance companies. This is not the first time that I have received a notice of cancellation of an insurance policy. I knew what this notice was when I received it.
"Q. You were familiar with the conditions of your policy? A. Yes, sir.
"Q. And you knew that you had five days to keep that policy if you wanted to, didn't you? A. Yes, sir.
"Q. Then why did you surrender it? A. Because Mr. Knower told me that was all I could do. I asked him if there wasn't some way I could re-instate this policy and he said `No,' and I asked if I could carry it over until I got other insurance, and he said `No,' that the only thing I could do was to bring my policy down and get my money back . . .
"Q. Did you pay the pro rata part of the premium when they gave you the check — that was all you ever paid was $8.05? A. I gave them the premium, I don't know what it was.
"Q. And they gave you all of the premium back? A. They gave me $8.05. That was what I paid for this insurance policy and got it all back. I had two policies with the company. One on my car, and my car burned a short time before my house did. I have had five fires within the last three years.
"Q. What did you have that was destroyed by fire? A. There was fully $250 worth, beds, dressers, bed clothing, bed ticks, three mattresses, two feather ticks, quilts, six sheets, eight pillows and two bolsters that was totally destroyed. I had from the 23rd day *Page 942 
of June, 1933, to the 27th day of June, 1933, to secure other insurance, but I did not. I knew there were several agents in town, but I did not see any of them. I didn't have time. I lived right here in town. Mr. Knower offered to take me home to get the policy, but I was too busy. I went out to the house at noon and brought the policy back down and gave it to the girl at Mr. Knower's office. And she, Miss Kinney, gave me all of my money back. Mr. Knower was not there."
On the part of defendant Mr. Knower, the local agent, testified that on June 23, 1933, after the issuance of the policy, plaintiff called at his office and said that he had a notice in the post office and asked the agent to go with him to the post office; that when they called at the post office and plaintiff had received the notice, he asked Mr. Knower if there was some way he could keep the policy until he could get other insurance, whereupon Mr. Knower said, "You can see for yourself, you have five days, and there are some other agents in town." That plaintiff said he did not care to see the other agents but wanted his money, whereupon Mr. Knower told plaintiff that if he would call at the office and bring in the policy he would give him his money either then or at the end of five days.
In addition to the provision relative to five days' notice of cancellation, the policy, which was in the usual form, provided that the insured could cancel the policy at any time upon request.
Defendant offered a demurrer to the evidence both at the close of plaintiff's case and at the close of the whole case. Error is assigned in the refusal of the trial court to sustain the demurrer offered at the close of the whole case. It is defendant's contention that when plaintiff brought in his policy for cancellation, surrendered his policy and received the amount paid by him as premium thereon, the policy was at an end and no liability thereafter attached; that plaintiff having testified that at the time of receiving the notice of cancellation he was familiar with the terms of the policy and knew that he could keep the policy five days if he wanted to, no issue was made for the jury on the question of involuntary cancellation and defendant was therefore entitled to a directed verdict.
Plaintiff counters this with the theory that under the terms of the policy and notice received he had five days grace and that his rights were therefore not affected by whether he delivered the policy and received the premium on June 23rd or not; that the fire occurred within said five day period; that if there were a mutual mistake in regard to his rights under the policy there could be no contract of release or cancellation at the time the policy was surrendered, and therefore the demurrer was properly overruled.
The contention of plaintiff that there was fraud or mistake leading up to the cancellation of the policy in question is not borne out by the evidence. Plaintiff's own testimony to the effect that he *Page 943 
was familiar with the terms of the policy and knew that he could hold the policy for five days indicates beyond any cavil that plaintiff was not misled into surrendering the policy and that he did surrender it with full knowledge of his rights. Even granting that the agent of the insurer had the authority to make the representation that the insured had no rights under the policy and that the only thing he could do was to surrender the policy and receive a return of the premium paid, the insured cannot be said to have relied upon any such representations in the light of his own admission to the effect that he knew the policy would hold good for five days. Therefore the only question is whether or not his voluntary act in surrendering the policy on the day he received the notice of cancellation and the receipt of the return of the premium and cancellation of the policy by the agent of the insurer, did, as a matter of law, have the effect of terminating the liability of defendant on the policy.
It has been uniformly held that a provision in an insurance policy requiring five days' notice to the insured in order to cancel a policy, is a provision inserted for the benefit of the insured and may be waived by him. [Warren v. Franklin Fire Ins. Co., 161 Iowa 440, 140 N.W. 554; Rosen v. German Alliance Co.,106 Me. 229, 76 A. 688; Finley v. Western Empire Ins. Co.,69 Wn. 673, 125 P. 1012; Kelley v. Aetna Ins. Co., 84 S.E. 502; Phoenix Ins. Co. v. State, 76 Ark. 180, 88 S.W. 917, 6 Ann. Cas. 440; 26 C.J. 143, 14 R.C.L., sec. 188, p. 1010.]
Furthermore, the acceptance of the return of the premium with the understanding that the policy was cancelled and with full knowledge of the provisions of the policy in regard to notice, would be binding upon the insured. [Malin v. Netherlands Ins. Co., 219 S.W. 143, 203 Mo. App. 153.]
Since it appears from plaintiff's own testimony that he surrendered his policy and accepted a return of the whole premium paid, which would only be due upon cancellation, with full knowledge of the terms of the policy and his right to five days' notice, it is our opinion under the authorities above cited, that there is no escape from the conclusion that the policy was in fact cancelled at the time of the fire and therefore the demurrer to the evidence should have been sustained. We think this judgment should accordingly be reversed. It is so ordered.Allen, P.J., and Smith, J., concur. *Page 944